IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | ) ) | CIVIL NO. 09-00509 JMS/BMK |
| | ) | ORDER GRANTING PLAINTIFF |
| Plaintiff, | ) | NAUTILUS INSURANCE |
| | ) | COMPANY'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT AND |
| | ) | DENYING DEFENDANTS' MOTION |
| K. SMITH BUILDERS, LTD. and | ) | FOR SUMMARY JUDGMENT |
| KYLE SMITH | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING PLAINTIFF NAUTILUS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

On January 28, 2008, Gabriel Campbell ("Campbell") filed a complaint in the Second Circuit Court of the State of Hawaii against K. Smith Builders, Kyle Smith, and others, seeking damages for injuries he sustained while working on a job site where K. Smith Builders and/or Kyle Smith was the general contractor (the "underlying action"). At the time of the accident, Defendants K. Smith Builders and Kyle Smith ("Defendants") had a commercial general liability insurance policy (the "Policy") issued by Plaintiff Nautilus Insurance Co. ("Plaintiff"). Plaintiff has been providing defense coverage to Defendants in the

underlying action, but filed this action seeking a declaration that it is not required to indemnify and/or defend Defendants because the Policy is not applicable to Campbell's claims against Defendants.

Currently before the court are cross motions for summary judgment. The parties agree that summary judgment is appropriate based on the terms of the Policy, but dispute whether the Policy indemnifies Defendants in the underlying action.  The Policy excludes liability coverage for bodily injury to "an employee of any insured" and the court must determine whether Campbell was an "employee" within the meaning of the Policy.  The court finds that Campbell was an "employee" and, based on the following, GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

## II.  <u>BACKGROUND</u>

### A.    Factual Background

#### 1.    *Campbell's Employment and Injury*

On June 28, 2007, Campbell suffered injuries when he fell from a second floor deck while working at a construction site where K. Smith Builders and/or Kyle Smith was the general contractor.  Compl. ¶ 14 (citing the First Amended Complaint in the underlying action).  Campbell alleges that he fell after making contact with a rail that "was unsafe, dangerous and presented an

unreasonable risk of harm to all parties in its vicinity including Plaintiff

Campbell." *Id.* The rail at issue was installed by Ben Fischer Construction, Inc.

("Fischer Construction"), a subcontractor for K. Smith Builders. Kyle M. Smith

Decl., Apr. 6, 2010 ("Apr. 6 Smith Decl.") ¶ 10; *Id.* Ex. G.

       While working at Defendants' construction site, Campbell was an

employee of ProService Hawaii. Deborah K. Wright Decl., Apr. 9, 2010 ("Apr. 9

Wright Decl.") Ex. F at 7-9 (indicating that Campbell was an employee of

ProService Hawaii).[1] Defendants did not have a contract with ProService Hawaii,

but Campbell worked on the construction site because ProService Hawaii leased

Campbell to Pro Interiors, LLC ("Pro Interiors"), which was a subcontractor for K.

Smith Builders. *Id.* Ex. H; *id.* Ex. E at 14:4-6, 20:22-21:4.[2] Pro Interiors routinely

leases ProService Hawaii employees, like Campbell, in order to carry out its

subcontracting projects. *Id.* Ex. E at 14:4-15. Following his injury, Campbell has

received workers' compensation benefits through ProService Hawaii's insurance.

Compl. ¶ 28; Deborah K. Wright Decl., Apr. 29, 2010 ("Apr. 29 Wright Decl.")

¶ 4.

---

[1] The court counts the pages of Exhibit F sequentially.

[2] The court cites to the deposition pages, not the sequential pages of Exhibit E.

In the underlying action, Campbell alleges claims for negligence and respondeat superior liability against Defendants as well as Fischer Construction and Ben Fischer, the owner of Fisher Construction.  Compl. Ex. 3 at ¶¶ 17-38.

### 2.    *Defendants' Insurance Coverage*

At issue in this action is whether Campbell's claims in the underlying action are covered by the Policy.  The Policy identifies K. Smith Builders as the named insured and covers Kyle Smith as an insured based on his status as an officer of K. Smith Builders.  Compl. Ex. 6 at E001; *id*. Ex. 6 at CG 00 01 12 04, § II(1)(d).[3]  The Policy provides that Plaintiff:

> will pay those sums that the insured becomes legally
> obligated to pay as damages because of "bodily injury"
> or "property damage" to which this insurance applies.
> We will have the right and duty to defend the insured
> against any "suit" seeking those damages.  However, we
> will have no duty to defend the insured against any "suit"
> seeking damages for "bodily injury" or "property
> damage" to which this insurance does not apply . . . .

*Id*. Ex. 6 at CG 00 01 12 04, § I(1)(a).[4]  In section IV(7), titled Separation of Insureds, the Policy further delineates the extent of the coverage provided:

---

[3]  For ease of reference, E001 is found on page two of Exhibit 6 when the exhibit's pages are counted sequentially.  Section § II(1)(d) is found on page seventeen of Exhibit 6 when the exhibit's pages are counted sequentially.

[4]  For ease of reference, § I(1)(a) is found on page nine of Exhibit 6 when the exhibit's pages are counted sequentially.

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a.    As if each Named Insured were the only Named Insured; and
> b.    Separately as to each insured against whom claim is made or 'suit' is brought.

*Id*. Ex. 6 at CG 00 01 12 04, § IV(7).[5]

The Policy includes several provisions relevant to determining

Defendants' bodily injury coverage.  Section § I(1)(b) provides:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period; and
> >
> > (3) Prior to the policy period, no insured . . . knew that the "bodily injury" or property damage" had occurred . . . .

*Id*. Ex. 6 at CG 00 01 12 04, § I(1)(b).[6]  The Policy excludes coverage, however,

for "bodily injury" to an "employee" under specified conditions.  These conditions

---

[5]  For ease of reference, § IV(7) is found on page twenty of Exhibit 6 when the exhibit's pages are counted sequentially.

[6]  For ease of reference, § I(1)(b) is found on page nine of Exhibit 6 when the exhibit's pages are counted sequentially.

are set forth in an endorsement to the Policy, which is titled "EXCLUSION --

INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS, AND

WORKERS" (the "Endorsement Exclusion").  *Id*. Ex. 6 at L205.[7]  The

Endorsement Exclusion provides:

> This insurance does not apply to:
>
>> e.    Employer's Liability
>>
>> "Bodily injury" to:
>> (1)    An 'employee' of any insured arising
>>        out of and in the course of:
>>        (a)    Employment by any insured; or
>>        (b)    Performing duties related to the
>>               conduct of any insured's
>>               business; . . . .
>>
>> This exclusion applies:
>> (1) Whether any insured may be liable as an
>> employer or in any other capacity; . . . .

*Id*. Ex. 6 at L205, § A.  The Endorsement Exclusion defines "employee:"

> "Employee" is any person or persons who provide
> services directly or indirectly to any insured, regardless
> of where the services are performed or where the "bodily
> injury" occurs, including, but not limited to a "leased
> worker", a "temporary worker", a "volunteer worker", a
> statutory employee, a casual worker, a seasonal worker, a
> contractor, a subcontractor, an independent contractor, and
> any person or persons hired by, loaned to, or contracted

---

[7]  For ease of reference, L205 is found on page forty of Exhibit 6 when the exhibit's
pages are counted sequentially.

by any insured or any insured's contractor, subcontractor, or independent contractor.  This definition of "employee" will not modify the provisions of Section II - Who is An Insured.

*Id*. Ex. 6 at L205, § C.

The Endorsement Exclusion is preceded by a notice across the top of the page: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  *Id*.  The Endorsement Exclusion changes the Policy by replacing § I(2)(e), which excluded coverage for "[b]odily injury to an 'employee' of the insured."  *See id*. Ex. 6 at CG 00 01 12 04, § I(2)(e) (internal punctuation modified for clarity).[8]  The Endorsement Exclusion's definition of "employee" is significantly broader than the definition of "employee" elsewhere in the Policy.  Except as used in the Endorsement Exclusion, "employee" is defined as including a "leased worker" but not including a "temporary worker."  *Id*. Ex. 6 at CG 00 01 12 04, § V(5).[9]

///

///

///

---

[8]  For ease of reference, § I(2)(e) is found on page ten of Exhibit 6 when the exhibit's pages are counted sequentially.

[9]  For ease of reference, § V(5) is found on page twenty of Exhibit 6 when the exhibit's pages are counted sequentially.

**B.    Procedural History**

On October 21, 2009, Plaintiff filed a Complaint seeking a declaratory judgment that (1) bodily and property damage liability coverage in the underlying action is precluded by Endorsement Exclusion; (2) Plaintiff has no coverage obligation to Defendants; and (3) Plaintiff has no duty to defend and/or indemnify Defendants in the underlying action.  Compl. ¶ 36.

On March 23, 2010, Plaintiff filed a Motion for Summary Judgment and on April 9, 2010, Defendants filed a Motion for Summary Judgment.  On April 30, Defendants filed an Opposition and on May 3, 2010, Plaintiff filed an Opposition.  Defendants and Plaintiff filed their Replies on May 7, 2010 and May 10, 2010 respectively.  A hearing was held on May 24, 2010.  At the hearing, the court requested supplemental briefing and on June 4, 2010, both parties filed supplemental memorandums.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  If the moving

party carries its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  DISCUSSION

Both parties contend that summary judgment is appropriate in their favor under the terms of the Policy.  The parties dispute, however, whether Campbell is an "employee" whose bodily injuries are excluded from coverage pursuant to the Endorsement Exclusion.  Additionally, the parties dispute whether the Policy indemnifies Kyle Smith even if it does not indemnify K. Smith Builders. Finally, Defendants argue that even if the Policy does not cover bodily injury to

Campbell, Plaintiff nevertheless owes Defendants a duty to defend in the underlying action.  The court addresses these issues in turn.

## A.    Duty to Indemnify Defendants

### 1.    *Framework for Construing Insurance Contracts*

Pursuant to Hawaii Revised Statute ("HRS") § 431:10-237, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy."  Thus, under Hawaii law, courts must look to the language of the insurance policy to determine the scope of the insurer's duties.  *See Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("In the context of insurance coverage disputes, we must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations."); *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").

10

Insurance policies must nevertheless be construed "in accordance with the reasonable expectations of a layperson." *Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co.*, 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing *Dawes v. First Ins. Co. of Haw.*, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994)).  The Hawaii Supreme Court classifies insurance contracts as "contracts of adhesion" and "ha[s] long subscribed to the principle that [insurance contracts] must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Guajardo v. AIG Haw. Ins. Co.*, 118 Haw. 196, 202, 187 P.3d 580, 586 (2008) (citing *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411-12, 992 P.2d 93, 106-07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted)).

### 2.   *Application of the Duty to Indemnify Framework as to K. Smith Builders*

#### a.   *Campbell was an "employee" of K. Smith Builders*

The plain and ordinary meaning of the Policy precludes coverage for K. Smith Builders' liability, if any, for Campbell's bodily injury.  In pertinent part, the Endorsement Exclusion provides that "[t]his insurance does not apply to . . . "[b]odily injury to: (1) An "employee" of any insured arising out of and in the course of . . . (b) [p]erforming duties related to the conduct of any insured's

business; . . . ." Compl. Ex. 6 at L205, § A.  The Endorsement Exclusion then

broadly defines "employee" as:

> any person or persons who provide services directly or
> indirectly to any insured, regardless of where the services
> are performed or where the "bodily injury" occurs,
> including, but not limited to a "leased worker", a
> "temporary worker", a "volunteer worker", a statutory
> employee, a casual worker, a seasonal worker, a
> contractor, a subcontrator, an independent contractor, and
> any person or persons hired by, loaned to, or contracted
> by any insured or any insured's contractor, subcontractor,
> or independent contractor.

*Id*. Ex. 6 at L205, § C.

Campbell was on the construction site as a worker loaned out to and

performing work for Pro Interiors, one of K. Smith Builders' subcontractors.  As a

worker on the construction site, Campbell was a person "who provide[s] services

directly or indirectly to" K. Smith Builders.  Whether Campbell's work for Pro

Interiors was a direct service to K. Smith Builders (based on Campbell's work on

the construction project itself) or an indirect service (based on Campbell's

contribution to a subcontracted component of the construction) is ultimately

immaterial -- either way, Campbell was providing a service for K. Smith Builders

based on his work to K. Smith Builders' construction site.  As a result, the court

finds that Campbell was a person "who provide[d] services directly or indirectly to

any insured."

12

Because the parties do not dispute that Campbell suffered "bodily injury" while "[p]erforming duties related to the conduct of any insured's business," the court finds Campbell's status as an "employee" determinative on the issue of K. Smith Builders' coverage.  Based on the Endorsement Exclusion's preclusion of liability for "[b]odily injury to an 'employee,'" Compl. Ex. 6 at L205, § A (punctuation modified for clarity), the court finds that the Policy does not cover K. Smith Builders' liability, if any, for Campbell's bodily injury.

> b.    *Defendants' arguments in opposition*

Defendants assert many arguments in opposition, contending that (1) Campbell is not an "employee" of K. Smith Builders; (2) the definition of "employee" is ambiguous and should be construed in Defendants' favor; (3) the Declarations in the Policy are ambiguous or misleading; (4) information outside the Policy demonstrates an intent to cover bodily injuries to workers, including Campbell; and (5) denial of coverage under the Policy is contrary to public policy. The court considers these arguments in turn.

> i.    Defendants' contentions that Campbell is not an "employee" of K. Smith Builders

Defendants argue that Campbell is not an "employee" of K. Smith Builders as defined by either the Hawaii Workers' Compensation Act, HRS § 386-1, or the Policy.

13

The definition of "employee" in the Hawaii Workers' Compensation Act is immaterial to the present dispute because under Hawaii law, the court must look to the language of an insurance policy itself, not a state statute, to determine the scope of the insurer's duties. *See Sentinel Ins. Co.*, 76 Haw. at 287, 875 P.2d at 904. Defendants' first contention therefore fails.

Defendants next contend that Campbell is not an "employee" as defined by the Policy because Campbell was not a person "hired by, loaned to, or contracted by any insured or any insured contractor, subcontractor, or independent contractor . . . ." Compl. Ex. 6 at L205, § C. Specifically, Defendants argue that Campbell was "leased" to Pro Interiors by ProService Hawaii and therefore not hired by, loaned to, or contracted by Pro Interiors, one of Defendants' subcontractors. Defendants are fruitlessly splitting hairs. There is no meaningful difference between "leasing" an employee and "loaning" an employee -- Defendants cannot identify a difference and, indeed, the Hawaii Supreme Court has referred to the terms interchangeably. *Frank v. Haw. Planing Mill Found.*, 88 Haw. 140, 146, 963 P.2d 349, 355 (1998) (discussing the "lending employer" in the context of an "employee leasing" agreement) (quoting *Ghersi v. Salazar*, 883 P.2d 1352, 1357-58 (Utah 1994)).

14

Moreover, the Policy's definition of "employee" is not as limited as Defendants suggest.  The Endorsement Exclusion specifically defines "employee" as "including, but not limited to" those covered by the language emphasized by Defendants (*i.e.*, those "hired by, loaned to, or contracted by any . . . subcontractor").  Compl. Ex. 6 at L205, § C.  The phrase "including, but not limited to" is an expression of enlargement, indicating that the examples that follow are simply an illustrative non-exhaustive list of examples subject to expansion.  *See Bloate v. United States*, 130 S. Ct. 1345, 1354 (2010) (finding that a list of items following "including but not limited to" language is "illustrative rather than exhaustive").  Campbell is an "employee" because he satisfies the general terms of the Endorsement Exclusion's definition and because his status as a leased employee is similar in nature to the specific words used in the Endorsement Exclusion's definition, including those "hired by, loaned to, or contracted by any . . . subcontractor."  Defendants' suggested reading -- that Campbell is not an employee because he was not hired by, loaned to, or contracted any subcontractor -- would render meaningless the expansive "including but not limited to" language in the Endorsement Exclusion's definition of employee.  Accordingly, the court finds unpersuasive Defendants' contentions that Campbell is not an "employee" of K. Smith Builders.

15

ii.     Defendants' contention that "employee" is ambiguous

Defendants contend that the Policy's multiple definitions of "employee" create an ambiguity as to the meaning of "employee" and that this ambiguity should be construed in Defendants' favor.  Section V(5) of the Policy defines "employee" more narrowly than the Endorsement Exclusion.  *Compare* Compl. Ex. 6 at CG 00 01 12 04, § V(5) (defining "employee" as including a "leased worker" but not a "temporary worker"), *with id*. Ex. 6 at L205, § C (defining employee as "any person or persons who provide services directly or indirectly to any insured. . . .").

No ambiguity exists -- the Endorsement Exclusion expressly substitutes its broader definition of "employee" for the more narrow definition used elsewhere in the Policy.  The Endorsement Exclusion prefaces its definition of "employee" with language explaining when the different definitions apply: "For the purposes of this endorsement, the definition of 'Employee' in the Definitions Section [i.e., § V] is **replaced** by the following[.]"  *Id*. Ex. 6 at L205, § C (emphasis in original).  The Endorsement Exclusion also provides conspicuous notice that the Endorsement Exclusion altered the contents of the Policy -- across the top of the page, the Endorsement Exclusion states: "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  *Id*.  Based on the

16

plain language of the Policy, the court thus finds no ambiguity in the meaning of "employee."

              iii.     Defendants' emphasis on the Policy's Declarations

Defendants contend that Plaintiff is required to indemnify them in the underlying action because the Declarations section of the Policy is misleading. The Declarations section sets forth the Policy's costs and lists three classifications of coverage: "Contractors - Executive Supervisors or Executive Superintendents," "Contractor - subcontracted work - in connection with building contraction, reconstruction, repair or erection - 1 or 2 family dwellings," and "Additional Insured (9)."  Apr. 6 Smith Decl. Ex. C at S150.[10]  Defendants contend that the second classification -- "Contractor - subcontracted work - in connection with building construction, reconstruction, repair or erection - 1 or 2 family dwellings" -- led them to understand that the Policy insured against personal injury losses caused by subcontractors.

Defendants provide no explanation for why they would read the subcontractor classification so broadly.  The plain, ordinary, and accepted common sense meaning of the terms used in the subcontractor classification do not suggest

---

[10]  For ease of reference, S150 is found on page three of Exhibit C when the exhibit's pages are counted sequentially.

that the Policy covered *all* liability for bodily injuries caused by contractors.  More

importantly, when read as a whole, the Policy plainly limits such liability coverage.

The court thus finds no support for Defendants' contention that the Declarations

section is misleading or leads to an ambiguity.  Instead, the court finds that a

reasonable person reading the Declarations and the Endorsement Exclusion would

*not* expect coverage for K. Smith Builders for Campbell's injuries.

iv.    Defendants' reliance on information outside the Policy

Defendants argue that prior insurance contracts issued to them by

Plaintiff demonstrate that the Policy provides coverage for Defendants in the

present case.  This extrinsic evidence is inadmissible because Defendants have not

shown that the Policy's terms are ambiguous.  *See Sentinel Ins. Co.*, 76 Haw. at

298-99, 875 P.2d at 915-16 (1994); *see also Hokama v. Relinc Corp.*, 57 Haw. 470,

476, 559 P.2d 279, 283 (1977) (adopting a rule "allowing extrinsic evidence, *i.e.*,

all evidence outside of the writing including parol evidence, to be considered by a

court to determine the true intent of the parties [only] if there is doubt or

controversy as to the meaning of the language embodying their bargain") (citations

omitted).[11]

---

[11]  Even if the court were to consider the prior insurance contracts between Plaintiff and Defendants, these contracts do not support Defendants' contention that the Policy indemnifies them for Campbell's claims in the underlying action.  First, Defendants argue that the Policy

(continued...)

18

v.     Defendants' contentions concerning public policy

Finally, Defendants contend that denying coverage in the underlying action is contrary to public policy.  Defendants argue that denying coverage violates public policy because HRS § 444-11.1 requires general contractors to maintain liability insurance for "comprehensive personal injury and property damage liability."  HRS § 444-11.1(a)(2).  *See also* Hawaii Admin. R. § 16-77-10(b)(4) (setting specific coverage requirements to maintain compliance with HRS § 444-11.1).

Defendants' public policy argument is specious.  HRS § 444-11.1 regulates only the insurance coverage general contractors must maintain -- not the coverage insurance companies must provide.  Nothing in the statute suggests that

---

[11](...continued)
covers the instant matter because compared to the prior insurance agreements, K. Smith Builders "paid an additional premium for the Subcontractor Coverage" in the Policy.  Apr. 6 Smith Decl. ¶ 8; *see also id.* ¶ 7.  Defendants' contention that they paid for undefined "Subcontractor Coverage" is entirely too vague -- the fact that Defendants added some form of "Subcontractor Coverage" in no way supports Defendants' contention that the specific dispute in the underlying matter is covered by the Policy.

Second, Defendants emphasize that the Policy does not contain a term found in the earlier insurance contracts that excluded coverage for bodily injury arising from operations performed by contractors and subcontractors.  *See* Defs.' Mot. for Summ. J. at 20 (discussing Form S012). That the Policy does not contain a term used in prior years that excluded coverage for some acts of contractors and subcontractors does not support Defendants' contention that the present Policy covers the specific liability at issue in the underlying action.  Further, Form S012 appears to have concerned bodily injury *caused* by subcontractors, which is a distinct issue from the claim raised in the underlying action -- that is, a claim for the bodily injury *incurred* by a subcontractor's leased employee.  As a result, the court rejects Defendants' contention that the premium for subcontractor coverage is illusory; in the event a subcontractor injured a non-employee, such as a bystander, the Policy would indemnify Defendants against those bodily injury claims.

every insurance policy must satisfy a general contractor's statutory coverage requirements.  HRS § 444-11.1 thus creates no obligation for Plaintiff and likewise has no bearing on how the court interprets the Policy.

In sum, the court finds that Campbell was an "employee" of K. Smith Builders as defined by the Policy's Endorsement Exclusion.  Accordingly, the court finds that the Policy does not indemnify K. Smith Builders for Campbell's bodily injury.

### 3.   *Application of the Duty to Indemnify Framework as to Kyle Smith*

Plaintiff argues, and Defendants dispute, that the Policy likewise precludes coverage for Kyle Smith for his liability, if any, in the underlying action. Assuming that Campbell is not an "employee" of Kyle Smith,[12] Plaintiff's duty to indemnify Kyle Smith turns on the meaning of two Policy terms -- the Endorsement Exclusion's exclusion of coverage for the "bodily injury to an employee of *any insured*," and the Separation of Insureds clause, which provides that the Policy "applies . . . [s]eparately as to each insured against whom claim is made or 'suit' is brought."  Compl. Ex. 6 at L205, § A (internal punctuation omitted and emphasis added); *Id*. at CG 00 01 12 04, § IV(7).

_____

[12]  The court does not reach the question of whether Campbell is an "employee" of Kyle Smith.  If Campbell is an "employee" of Kyle Smith, however, coverage is precluded by the plain language of the Endorsement Exclusion.  *See* Compl. Ex. 6 at L205 § A.

Courts are divided on how to interpret policies containing both an "any insured" exclusionary clause and a separation of insureds clause. A minority of courts hold that a separation of insureds clause mandates that an insurance agreement -- including its exclusions -- be read as if each individual seeking coverage is the only "insured" covered. *See, e.g., Shelby Realty LLC v. Nat'l Surety Corp*., 2007 WL 1180651, at *3 (S.D.N.Y. Apr. 11, 2007). Thus, in the minority view, when a separation of insureds clause is present, an exclusion precluding coverage to an employee of any insured applies to each insured individually. In other words, the separation of insureds clause controls over the "any insureds" exclusion cause. The majority of courts, however, have found just the opposite. The majority opinion holds that a separation of insureds clause does not prevent an exclusion from barring coverage to *any* insured, even when the particular insured seeking coverage is not himself the employer. *See Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F. Supp. 413, 419 (E.D. Pa. 1996); *Evanston Ins. Co. v. OEA, Inc.*, 2005 WL 1828796, at *8 (E.D. Cal. July 25, 2005) (collecting cases); *Allstate Ins. Co. v. Kim*, 121 F. Supp. 2d 1301, 1308-09 (D. Haw. 2000) (finding that a separation of insureds clause did not negate the policy's exclusion of coverage for bodily injuries resulting from the intentional acts of any insured).

21

The majority reasoning is more persuasive and the court believes that the Hawaii Supreme Court would adopt this approach.  To give full effect to the terms of the Policy, the court must interpret an exclusion barring coverage to "*any* insured" differently from an exclusion barring coverage to "*the* insured."  Under the minority review, the two phrases are treated indistinguishably -- that is, like "the insured," "any insured" is interpreted as if it encompasses only the particular insured seeking coverage.  *See Evanston Ins. Co.*, 2005 WL 1828796, at *8 ("To hold that the term 'any insured' in an exclusion means 'the insured making the claim' would collapse the distinction between the terms 'the insured' and 'any insured' in an insurance policy exclusion clause, making the distinction meaningless."); Allan D. Windt, *Insurance Claims & Disputes: Representation of Insurance Companies and Insureds*, 3 Ins. Claims & Disputes 5th § 11:8 (2010) (stating that the minority approach "is not justifiable" and citing cases following the majority view).  Hawaii courts "have long expressed . . . disapproval of interpreting a contract such that any provision be rendered meaningless." *Stanford Carr Dev. Corp. v. United House, Inc.*, 111 Haw. 286, 297, 141 P.3d 459, 470 (2006).  Accordingly, the court rejects the minority view because that approach would render meaningless the term "any insured."

The history of the separation of insureds clause further supports the court's conclusion and "makes clear that the 'separation of insureds' clause only affects exclusionary clauses referring to 'the insured,' and not 'any insured.'" *Evanston Ins. Co.*, 2005 WL 1828796, at *8. Prior to 1955, courts interpreted exclusions concerning "the insured" to preclude coverage for *any* insured -- a result contrary to the intentions of the insurance companies. Norman Risjord & June Austin, *"Who is 'The Insured'" Revisited*, 28 Ins. Couns. J. 100, 101 (1961) ("Ironically, this is the only known situation where many of the courts persist in erring in *favor* of the insurance companies!"). In 1955, to resolve the confusion and clarify that 'the insured' is to be applied separately to each individual insured, the National Bureau of Casualty Underwriters and the Mutual Insurance Rating Bureau adopted the separation of insureds clause, then titled the severability of interests clause. *Id*. The history of the separation of insureds clause shows that "the term 'the insured' means, and means *only*, the *person claiming coverage*, or (to put it another way) *only* the person coverage for whom is at issue." *Id*. at 100; *see also Alaska Dept. of Transp. & Public Facilities v. Houston Cas. Co.*, 797 P.2d 1200, 1205-06 (Alaska 1990) (Matthews, J., concurring) (discussing the history of the separation of insureds clause); *Tri-S Corp. v. W. World Ins. Co.*, 110 Haw. 473, 492, 135 P.3d 82, 101 (2006) ("[W]e adopt the majority rule and hold that where

23

an insurance policy contains a severability-of-interests clause, the phrase "the insured" in a policy exclusion must be read to refer to the insured seeking coverage as opposed to the "named insured" or "any insured").

In this case, the Endorsement Exclusion expressly modified the terms of the Policy by changing the bodily injury exclusion to cover "bodily injury to an employee of *any insured*," Compl. Ex. 6 at L205 § A (internal punctuation omitted and emphasis added), and not "bodily injury to an employee of *the insured*," Compl. Ex. 6 at CG 00 01 12 04, § I(2)(e) (internal punctuation omitted and emphasis added).  The court gives effect to this modification and finds that the Endorsement Exclusion precludes coverage for Kyle Smith because Campbell is an employee of any insured -- in this instance, K. Smith Builders.

In opposition, Defendants advocate the minority view and contend that the phrase "an employee of any insured" is ambiguous and must be construed in their favor.  The court finds no ambiguity.  Although a split exists among courts over how to interpret exclusions concerning "any insured" when a separations of insureds clause is present, the majority position is strongly established and has been previously applied by a court in this district.  *See Allstate Ins. Co.*, 121 F. Supp. 2d at 1308-09 (D. Haw. 2000) (adopting the majority rule and citing cases). Further, the term "any insured" is not, in fact, ambiguous.  "Any" is defined by the

Oxford English Dictionary as "concerning a being or thing of the sort named, without limitation as to which . . . ." *Oxford English Dictionary* 2d (1989). Accordingly, a layperson would understand "any insured" as used in the Policy to include both K. Smith Builders and Kyle Smith because each is an insured.  As a result, the court finds no ambiguity.

In further opposition, Defendants rely on *Tri-S Corp.*, 110 Haw. at 491-92, 135 P.3d at 100-01, and argue that Hawaii courts would find that the Policy indemnifies Kyle Smith.  Defendants significantly distort the findings of *Tri-S Corp.*  *Tri-S Corp.* interpreted a policy exclusion relating to the conduct of "the insured" and found that "the phrase 'the insured' in a policy exclusion must be read to refer to the insured seeking coverage as opposed to the 'named insured' or 'any insured.'" *Tri-S Corp.*, 110 Haw. at 492, 135 P.3d at 101.  Far from furthering Defendants' position, *Tri-S Corp.* supports the court's conclusion that "the insured" has a distinct meaning from "any insured."

In sum, the court finds that the severability of insureds clause does not render meaningless the Endorsement Exclusion's use of the term "any insured."

Campbell is an employee of any insured -- specifically, K. Smith Builders -- and, as a result, the Policy precludes coverage for Kyle Smith.[13]

## B.    Duty to Defend

Defendants contend that even if the Policy does not cover bodily injury to Campbell, Plaintiff nevertheless owes Defendants a duty to defend them in the underlying action.  Specifically, Defendants argue that Plaintiff has a duty to defend them against Campbell's allegations in the underlying suit that Defendants negligently failed to supervise and negligently failed to warn.

### 1.    Framework for Duty to Defend

An insurance company's duty to defend is broader than its duty to indemnify and "arises whenever there is the mere potential for coverage." *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 326, 832 P.2d 733, 735 (1992) (citations omitted).  "Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." *Burlington Ins. Co.*, 383 F.3d at 944 (citing *Hawaiian Holiday Macadamia Nut Co.*

---

[13]  In addition to the reasons set forth above, the court also notes that Hawaii courts frequently follow California insurance law, s*ee, e.g.*, *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 292-93, 875 P.2d 894, 909-10 (1994), and on the issue of the separation of insureds clause and "any insureds" exclusions, California follows the majority rule and gives effect to the "any insureds" language.  *Evanston Ins. Co. v. OEA, Inc.*, 2005 WL 1828796, at *8 (E.D. Cal. July 25, 2005); *see also Cal. Cas. Ins. Co. v. Northland Ins. Co.*, 48 Cal. App. 4th 1682, 1697 (4th Dist. 1996) (finding that an "any insured" exclusion "prevail[s] over a more general severability provision").

*v. Indus. Indem. Co.*, 76 Haw. 166, 170, 872 P.2d 230, 234 (1994) (citations

omitted)).  Doubts about the extent of the duty to defend are to be resolved,

however, "against the insurer and in favor of the insured." *Sentinel Ins. Co.*, 76

Haw. at 287, 875 P.2d 894, 904 (citations and quotations omitted).  Further,

"where a suit raises a potential for indemnification liability of the insurer to the

insured, the insurer has a duty to accept the defense of the entire suit even though

other claims of the complaint fall outside the policy's coverage." *First Ins. Co. of

Haw., Inc. v. Hawaii*, 66 Haw. 413, 417, 665 P.2d 648, 652 (1983).

### 2.    *Application*

In this case, the pleadings in the underlying action fail to allege any

basis for recovery within the Policy.  Campbell's claims in the underlying action

all arise from his bodily injury.  As discussed above, based on the terms of the

Policy, Plaintiff does not owe Defendants a duty to indemnify them for such bodily

injury claims.  Because these are the only claims at issue, Plaintiff likewise does

not owe Defendants a duty to defend.

In opposition, Defendants argue that Campbell alleges negligence

claims distinct from his bodily injury claims.  Defendants contend that Plaintiff

thus owes Defendants a duty to defend against these negligence claims even if the

Policy does not cover Defendants' liability for Campbell's bodily injury.  In so

27

arguing, Defendants create a false distinction.  Contrary to Defendants' representations, Campbell's bodily injury claims *are* his negligence claims -- Campbell alleges that his bodily injuries are the direct and proximate result of Defendants' negligence.  Compl. Ex. 3 at ¶ 40.  As a result, Plaintiff owes no separate duty to defend Defendants against Campbell's negligence claims.

In sum, the court finds that the pleadings in the underlying action fail to allege any claims that may be covered by the Policy and, as a result, Plaintiff owes no duty to defend.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment.

The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 22, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Nautilus Ins. Co. v. K. Smith Builders, Ltd. et al.*, Civ. No. 09-00509 JMS/BMK, Order Granting Plaintiff Nautilus Insurance Company's Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment